UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
AUG 23 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

TROY V.[1],

                    Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

1:20-CV-01477-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Troy V. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, the Commissioner's motion (Dkt. No. 14) is denied, and the case is remanded to the Commissioner for further proceedings.

_____

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only his first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI and DIB on May 25, 2017 and December 18, 2017 respectively, alleging disability beginning March 30, 2017. (*See* Tr. 159-67, 229-30)[3] Plaintiff's disability benefits application was initially denied on October 6, 2017. (Tr. 152-67) Plaintiff timely filed a written request for a hearing on December 20, 2017. (Tr. 169-70) A hearing was held before Administrative Law Judge Stephen Cordavani ("the ALJ") on April 25, 2019. (Tr. 10-25) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Kathleen Byrnes ("the VE"). (*Id.*) On July 17, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 7-30) The Appeals Council denied plaintiff's request for review of the ALJ's determination on August 15, 2020, and this action followed. (Tr. 1-6)

Born on September 4, 1966, plaintiff was 50 years old on the alleged onset date and 54 years old on the date of the disability hearing. (Tr. 120, 229) Plaintiff graduated high school and has past relevant work as a store manager, warehouse manager, garage supervisor, tool and equipment rental clerk, plant manager, scrap prep supervisor, and asphalt paving supervisor. (Tr. 61-62, 120, 229)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record but cites only the portions of it that are relevant to the instant decision.
[3] References to "Tr." are to the administrative record in this case.

2

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d

3

260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.      *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or

4

her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison,

the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the SSA through December 31, 2021. (Tr. 12) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 30, 2017. (*Id.*) At step two, the ALJ found that plaintiff has the severe impairments of obesity; diabetes mellitus with peripheral neuropathy; hypertension; history of two cervical vascular accidents (CVA); degenerative disc disease of the neck; right ankle and tibiotalar osteoarthritis status post ankle fusion; mild restrictive lung disease; and

6

chronic rhinitis.[4] (*Id.* at 12-13) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-14) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ramps, stairs, ladders, ropes, or scaffolds. He cannot balance, kneel, crouch, or crawl. He can occasionally handle and finger with the right, dominant hand, and frequently handle and finger with the left hand. He cannot work around hazards such as unprotected heights or dangerous moving machinery. He cannot operate heavy equipment or operate foot controls. He must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. He must use a cane and/or walking boot during ambulation.[5]

(Tr. 14-23) Proceeding to step four, the ALJ found that plaintiff was capable of performing past relevant work as a plant manager. (Tr. 23-24) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from the alleged onset date of March 30, 2017, through the date of the decision. (Tr. 24)

IV.   *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred in relying upon stale evidence. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees and finds that remand is necessary on this basis.

---

[4] Also at step two, the ALJ concluded while the record showed some indication of hyperlipidemia, obstructive sleep apnea, diabetic retinopathy, and kidney disease, these impairments were non-severe and did not result in any work-related limitations. (Tr. 13) The ALJ also found that while plaintiff alleged cognitive issues regarding concentration, word finding, and difficulty regulating emotions, there was nothing in the record to support these allegations or to suggest any cognitive deficits. (*Id.*)

[5] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, or small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §404.1567(b).

7

An ALJ may not rely on medical source opinions that are stale when determining a claimant's RFC. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). A medical opinion may be stale if it is remote in time and does not account for a claimant's deteriorating condition. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 2016) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition."); *Hawkins v. Colvin*, 15-CV-6394, 2016 U.S. Dist. LEXIS 148380 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."). In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of a claimant's deteriorating condition. *See, e.g., Biro*, 335 F. Supp. 3d at 471 ("The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, [the consultative examiner's] opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record."); *Jeffords v. Comm'r of Soc. Sec.*, 17-CV-1085-MJR, 2019 U.S. Dist. LEXIS 66431 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively, on medical opinions ... prior to plaintiff's 2013 spinal surgery and 2014 fall"); *Morales v. Comm'r of Soc. Sec.*, 17 CV-341-FPG, 2019 U.S. Dist. LEXIS 38692 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before

8

two additional surgeries); *Pagano v. Comm'r of Soc. Sec.*, 16-CV-6537-FPG, 2017 U.S. Dist. LEXIS 158656 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

In this case, Dr. Samuel Balderman performed a consultative internal medicine examination of plaintiff on August 3, 2017. (Tr. 558-61) Dr. Balderman opined, *inter alia*, that plaintiff had moderate to marked limitations in sitting, standing, walking, climbing, and carrying. (*Id.*) The ALJ found this opinion to be somewhat persuasive. (Tr. 20-21) On August 22, 2017, state agency medical consultant, Dr. R. Mohany, reviewed the record evidence and opined, *inter alia*, that plaintiff could stand and/or walk for two hours and sit for about six hours over the course of an eight-hour workday. (Tr. 120-134) The ALJ found Dr. Mohanty's opinion to be persuasive. (Tr. 21) However, both Dr. Balderman's and Dr. Mohany's opinions were rendered before plaintiff underwent right ankle fusion surgery on August 6, 2018. (Tr. 671-72) Because Dr. Balderman's and Dr. Mohanty's opinions appear to be the only opinions relied on by the ALJ with regard to plaintiff's physical abilities, and specifically with regard to his ability to perform the work described in the RFC, there is now a gap in the record necessitating remand. *See Lukasik v. Comm'r of Soc. Sec.*, 19-CV-760, 2020 U.S. Dist. LEXIS 77855 (W.D.N.Y. May 4, 2020) ("The surgical interventions alone demonstrate a 'deterioration' of Plaintiff's condition, such that Dr. Schwab's opinion of a "mild to moderate" limitation in walking and climbing may no longer be accurate. Dr. Schwab's opinion therefore cannot qualify as substantial evidence on which to base an RFC, and remand is therefore warranted.")

In the decision, the ALJ indicates that "[a]lthough Dr. Mohanty's opinion predates the claimant's ankle surgery, there is not otherwise a gap in the opinion evidence during the period after surgery." (Tr. 21) The Court disagrees. In fact, the relevant medical evidence shows not only that plaintiff underwent surgery following the opinion of the consultative examiner and the state agency consultant, but also that his ankle condition continued to deteriorate after these opinions were rendered. For example, imaging of plaintiff's right ankle in September of 2017 reveled prominent degenerative changes and soft tissue swelling. (Tr. 631) That same month, plaintiff fell in a doctor's office waiting room due to his right ankle giving out. (Tr. 887) He also reported chronic instability on the right side. (*Id.*) Post-surgical imaging of plaintiff's ankle on August 21, 2018 showed degenerative changes. (Tr. 626) By October 2018, imaging of plaintiff's ankle showed postsurgical changes and severe degenerative changes at the tibiotalar joint, as well as soft tissue swelling with calcification. (Tr. 624) On February 19, 2019, imaging of plaintiff's ankle showed moderate degenerative changes and spurring. (Tr. 1161) Imaging of his ankle and foot on June 11, 2019 showed postsurgical changes, marked degenerative changes, and swelling of the foot, as well as multiple, prominent soft tissue calcifications. (Tr. 1157) The ALJ failed to substantively address any of this evidence and instead relied solely on the stale, pre-surgery opinions in formulating the RFC. As a result, the RFC is not supported by substantial evidence. *See Snyder v. Comm'r of Soc. Sec.,* 19-CV-185, 2020 WL 4434918, at *5 (W.D.N.Y. Aug. 3, 2020) ("Plaintiff's post-surgical medical records are not so clear that the ALJ could assess functional limitations without the assistance of competent medical evidence."); *Smith v. Saul,* 17-CV-6641-CJS, 2019 U.S. Dist. LEXIS 102689, (W.D.N.Y. June 19, 2019)

("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Finally, the Court notes that this error was not harmless. The ALJ found that plaintiff was capable of performing sedentary work with some additional postural limitations. "Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a). Jobs are sedentary if walking and standing are required "occasionally." *Id.* Social Security rulings provide that "occasionally" means occurring up to one-third of the time. *See Social Security Ruling* No. 83-10, 1983 SSR LEXIS 30 (1983). Thus, a sedentary level of exertion may require up to two hours of walking over the course of the workday. (*Id.*) Here, Dr. Mohanty opined that plaintiff was capable of standing and/or working for up to two hours during the course of the workday. (Tr. 120-134) Indeed, the ALJ clearly relied on this opinion in finding that plaintiff was capable of performing sedentary work. However, as noted above, Dr. Mohanty's opinion was stale. More recent records reflect a deterioration in plaintiff's ankle condition, which in turn may suggest more limitations than accounted for by Dr. Mohanty.

For these reasons, remand is necessary for the Commissioner to re-evaluate plaintiff's RFC in light of his August 6, 2018 right ankle surgery and the subsequent medical records addressing this condition. If necessary, the Commissioner should

obtain an updated medical opinion as to plaintiff's ability to stand and/or walk over the course of a workday.

Plaintiff also argues that remand is necessary because the Appeals Council improperly rejected evidence. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees and finds that remand is necessary on this basis as well.

Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of their request for review of an ALJ's denial of benefits. *See* 20 C.F.R. § 404.970. The Appeals Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision. *Id.* "Evidence is 'material' when 'it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Poler v. Comm'r of Soc. Sec.*, 18-CV-1298, 2020 WL 1861920, at *3 (W.D.N.Y. Apr. 14, 2020); *citing Pennetta v. Comm'r of Soc. Sec.*, 18-CV-6093, 2019 WL 156263, at *3 (W.D.N.Y. Jan. 10, 2019). Moreover, the Second Circuit has indicated that "cursory, formulaic" statements by the Appeals Council are not helpful, and may not be accepted at face value. *Pollard v. Halter*, 377 F.3d 183, 192-93 (2d Cir. 2004).

In this case, plaintiff submitted, to the Appeals Council, medical records from Dr. Liudmila A. Skudnou, dated August 15, 2019. (Tr. 2) These records reflected that plaintiff ambulated with a cane and was easily short of breath on walking, and that he complained of decrease in balance, weakness in lower extremities, and tendency to

frequently fall. (Tr. 45-46) He further complained of decrease in cognition, memory and concentration as well as poor handwriting and slurred speech following his strokes. (*Id.*) He reported that he was seeing a speech therapist and also reported one daily episode of crying. (Tr. 46) Upon examination by Dr. Skudnou, plaintiff was found to have a mild cognitive impairment and mild slurred speech. (Tr. 47) In denying plaintiff's request for review, the Appeals Council stated, without further explanation, that the August 15, 2019 medical records from Dr. Skudnou "[did] not show a reasonable probability that [the evidence] would change the outcome of the [disability] decision." (Tr. 2) For the following reasons, the Court disagrees.

Here, the ALJ determined, at step two of the sequential evaluation, that while plaintiff "alleged cognitive issues regarding concentration, word finding, and difficulty regulating emotions…there [was] nothing in the record to support these allegations." (Tr. 13) The Court does not find this assessment to be entirely accurate.  The record shows that plaintiff had two strokes, one in 2012 and one in 2016. (Tr. 86) Plaintiff testified that following the second stroke, he experienced difficulties finding words; difficulties concentrating and remembering things; difficulties communicating; and difficulties regulating his emotions. (Tr. 87-90) He testified that he was unable to work both because of problems with his ankle as well as problems with processing information and searching for words. (Tr. 16) Likewise, a neurological examination on April 4, 2019 showed that plaintiff had a mild cognitive impairment and slurred speech. (Tr. 1210) Plaintiff described decreased concentration, difficulties with handwriting and speech, and frequent inappropriate crying episodes. (Tr. 1205-06) On May 6, 2019, plaintiff was seen in a speech pathology clinic to address his difficulties with memory and slurred

speech. (Tr. 1202) He was prescribed a cognitive prosthetic device to help improve his memory. (*Id.*)

In sum, contrary to the ALJ's findings at step two, the record here does reflect at least some evidence that plaintiff suffered from some cognitive deficiencies. However, the ALJ found that plaintiff did not have a medically determination mental impairment. Consequently, he rendered an RFC that did not include any mental limitations and found plaintiff capable of performing his past relevant work as a plant manager. During the hearing, the VE testified that an individual who was limited to simple, routine, and repetitive tasks would not be able to perform plaintiff's past relevant work. (Tr. 118) Thus, the ALJ's rejection of any mental limitations certainly had a material impact on his finding that plaintiff was capable of performing past relevant work. Plaintiff then presented additional, new evidence to the Appeals Council, from within the relevant time period, that tended to show he suffered from cognitive difficulties which may impact his ability to perform substantial gainful activity. Thus, the Court rejects the Appeals Council finding that plaintiff did not show a "reasonable probability" that the new evidence would have changed the outcome of the disability determination. At a minimum, this new evidence, combined with the evidence already in the record, shows that plaintiff's cognitive deficiencies may, in fact, qualify as a medically determinable impairment and that mental restrictions may need to be incorporated in the RFC. *See Poler v. Comm'r of Soc. Sec.*, 18-CV-1298, 2020 U.S. Dist. LEXIS 65422 (W.D.N.Y. April 14, 2020) (finding that treatment records which documented evidence of plaintiff's fibromyalgia were material, and should have been considered by the Appeals Council, particularly in light of the ALJ's step two determination that plaintiff's fibromyalgia was

not a severe impairment). Thus, on remand, the Commissioner should consider the August 15, 2019 medical records from Dr. Skudnou in light of the remainder of the record evidence as a whole. *See Wilbon v. Colvin*, 15-CV-756, 2016 WL 5402702, at *5 (W.D.N.Y. Sept. 28, 2016) (stating that if the Appeals Council fails to consider material evidence related to the relevant time period, "the proper course is for the reviewing court to remand for reconsideration in light of the new evidence.").[6]

Lastly, plaintiff argues that remand is necessary because the ALJ improperly evaluated the May 21, 2019 opinion of Dr. Skudnou, who treated plaintiff every six months since 2017. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law))

SSA regulations regarding the evaluation of medical evidence have been amended for claims, like this one, filed after March 27, 2017. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, ALJ's are no longer directed to afford controlling weight to treating source opinions. *Id.* Even though the new regulations "eliminate the perceived hierarchy of medical sources," the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Brian O. v. Comm'r of Soc. Sec.*, 1:19-CV-983, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020); *citing* 20 C.F.R. §§404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two most important factors for the ALJ to consider when

---

[6] Because the Court finds that the matter should be remanded for reconsideration of plaintiff's mental limitations in light of the new evidence presented to the Appeals Council, the Court need not address plaintiff's argument that the ALJ erred in failing to meaningfully account for his cognitive issues in the RFC. On remand, the Commissioner should reconsider all relevant evidence of plaintiff's cognitive impairments both at step two of the sequential evaluation and, if necessary, in formulating the RFC.

determining the persuasiveness of a medical source opinion are "supportability" and "consistency." *Id.*; *accord Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853; 20 C.F.R. § 416.920c(b)(2). Here, plaintiff argues that the ALJ did not sufficiently explain, pursuant to the new regulations, his reasoning for finding Dr. Skudnou's opinion to be unpersuasive.

Because the Court has determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, it declines to specifically address this argument. *See Bell v. Colvin*, 5:15-CV-01160, 2016 U.S. Dist. LEXIS 165592 (N.D.N.Y. Dec. 1, 2016) Because the Court has directed the Commissioner to account for additional evidence on remand, supportability and consistency may logically need to be reconsidered based upon the additional evidence. On remand, the Commissioner should reconsider Dr. Skudnou's opinion when formulating the RFC, in light of the requirements of the new regulations, the directives set forth herein, and all of the record evidence as a whole.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 12), defendant's motion for judgment on the pleadings is denied (Dkt. No. 14), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:          August 22, 2022
                Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge